JULY TERM, 1884, No. 61.                    MAY 28, 1884.

# Henderson's Appeal.

1. Where a sheriff paid the money realized from an execution to the attorneys of record for the plaintiff after the return day of the writ, and the rule to pay the money into court was not granted until more than two months after the payment, and was not served upon the sheriff until four months had elapsed, his defense against the rule is sufficient, unless there are other facts which deprive him of the right to set up the payment.

2. The sheriff, having been ruled on the 10th of the month to return the writ, paid the moneys to the counsel of record for plaintiff upon the 16th, and returned the writ upon the 17th. A rule to pay the moneys into court was applied for on the 18th, was not granted for two months, and was not issued until nearly four months later. *Held*, that it was too late.

3. Written notice to pay the moneys into court, service of which is accepted for the sheriff by an attorney, who testifies that he did it without examination, that he never communicated the matter to the sheriff, that he had no authority to accept service, and that when he was to accept service or notice of any rules the sheriff always directed him to do it, is not sufficient to charge the sheriff.

4. Where counsel of record performed all the professional service rendered, obtained the confession of judgment, issued the execution, delivered it to the sheriff, caused it to be levied and directed the sale, notified the plaintiff of the judgment and execution, to which plaintiff made no objection, but wrote asking for a statement of the writs and thanking them for information, plaintiff cannot set up, as against the sheriff, that such counsel were not entitled to receive the moneys obtained upon the executions.

[Henderson's Appeal.]

Before MERCUR, C. J.; GORDON, TRUNKEY, PAXSON, STERRETT, GREEN, and CLARK, JJ.

Appeal of Thomas K. Henderson from a decree of the Court of Common Pleas of *Huntingdon County*, discharging a rule on Thomas J. Dunkel, sheriff of Centre county, to pay money into court arising from the sale of the personal property of Fleck & Miller.

The facts, as they appeared before the court, from evidence taken and depositions read at the hearing and argument of the rule, were as follows:

Prior to March, 1883, Fleck & Miller were engaged in mercantile business in Philipsburg, Centre county, Pa. On March 16, 1883, Fleck & Miller executed judgment notes in Huntingdon county to Crosswell & Miller for $900, F. K. Henderson for $492, and to seven other creditors for various amounts. Judgment was entered in the common pleas of Huntingdon county on each of these notes by Speer & McMurtrie, attorneys-at-law, in Huntingdon. Thomas Miller, one of the firm of Fleck & Miller, testified that both Mr. Fleck and himself went to Huntingdon to the office of Speer & McMurtrie. "We made confession of judgment to the parties. We did it on that day because we found we were going to fail, and we preferred our home creditors." Miller testified that the firm of Fleck & Miller owed Thomas K. Henderson $474 50, but that, owing to an error in summing up the account, judgment had been confessed to him for $492. The above judgments were entered on March 23, 1883, in the common pleas of Centre county, and writs of *test. fi. fa.* were issued on them March 24, 1883, returnable on April 9, 1883. On March 27, 1883, Speer & McMurtrie, who were not the regular attorneys of Henderson, informed Henderson by letter of what had been done, to which he replied:

"*March 28, 1883.*

"Messrs. Speer & McMurtrie:

"GENTS: Yours to hand. In reply, I did not know of the failure of Messrs. Fleck & Miller until I received yours. Will certainly give the matter my attention, as my claim is justly due and owing. Will you please give me a statement of the writs, with the names of the plaintiffs, &c., as I want to go to the sale and protect my claim? Much obliged for your information.

"Respectfully,

"THOS. K. HENDERSON."

Under the above-mentioned writs, Thos. J. Dunkel,

sheriff of Centre county, levied upon the stock of merchandise and personal property of Fleck & Miller, and sold it at public outcry in Philipsburg, commencing on April 4, 1883, and continuing from day to day until all the property levied upon was sold.    Henderson testified, *inter alia,* as follows :

"I went over to the sale.  Sheriff Dunkel, of Centre county, was managing the sale.   I met the sheriff at the Ward House, in Tyrone, as I was going over to the sale. He showed me the writs in his hands against Fleck & Miller   *   *   *   *   At Philipsburg I told him I expected the store to be retailed out and the most made of it that could be, and in the event of my judgment not being covered—debt, interest, and costs—that he should pay the money into court, as I intended contesting some of the claims ; that I believed them to be fraudulent, one of them at least.   *   *   *   *   I did not notify Speer & McMurtrie to retire from the case.   I did not recognize them as my attorneys at any time."   Dunkel testified : "He (Henderson) did not, at the Ward House in Tyrone, or in Philipsburg during the sale, that I remember, give me any notice to pay the money into court.   I don't think I had notice at any time from Henderson that I was to pay the money into court, until after it was actually paid over to Speer & McMurtrie.   Henderson said something to me about not paying the money to Speer & McMurtrie, but I don't recollect that he said to pay it to any one else. *   *   *   *   I paid the entire amount to Speer & McMurtrie, the attorneys on the several writs, and took their receipt therefor."   On April 11, 1883, a written notice, signed by T. K. Henderson, addressed to T. J. Dunkel, Esq., sheriff of Centre county, was handed to D. F. Fortney, Esq., of the Centre county bar, notifying the sheriff to pay no money to Speer & McMurtrie on the debt, interest, or attorneys commissions' in this case, that Speer & McMurtrie were not his attorneys ; that he should pay the debt and interest to him, and the attorneys' commissions to his regular attorneys, Petriken & McNeil, or the debt, interest, and attorney's commissions to Messrs. Petriken & McNeil ; and further, that he should pay the whole fund realized from the sale of the personal property of the defendants into court, as he intended having an auditor appointed and contest the validity of some of the judgments.    Fortney, who was attorney for the sheriff, indorsed the notice as follows : "And now, April 11, 1883, I hereby accept service of this notice.   D. F. Fortney, attorney for sheriff."

[Henderson's Appeal.]

Fortney testified as to this notice as follows :

"Some time on or about the 11th of April, 1883, Mr. Bower, of the firm of Alexander & Bower, attorneys in Bellefonte, came to me with some kind of a paper, which he said had been sent to him by Petrekin & McNeil, of Huntingdon, Pa., to serve on the sheriff of Centre county. Mr. Bower said, when he came to me, that 'the sheriff is away ; you had better accept service for him.' I took the paper and wrote on an acceptance and signed it. I think Mr. Bower also left a copy of the notice in my hands. The sheriff was away at the time, and did not return for two or three days. At the time Mr. Bower brought this notice to me I was very busy in my office ; I didn't even take time to read the notice, and never, to my knowledge, called the attention of the sheriff to it or told him anything about it. I had no interest in the sale of the property of Fleck & Miller ; knew nothing about the writs or the sale, or what the sheriff had done ; he had never consulted me or said anything to me about it. When I accepted service of this notice I had no direction or authority from him to do so. In cases in which the sheriff desires my advice, he comes to me, and when I am to accept service or notice of any rules for him, he always directs it. I believe that the sheriff never knew anything about the notice to pay this money into court, or that Mr. Henderson wanted to contest judgments, until after the money realized on the sale had been paid over to Speer & McMurtrie, attorneys."

On April 10, 1883, the day after the return day of the writs, a rule was granted on the sheriff to return his writs. On April 16, he paid the money realized from the sale, less his costs to the attorneys of record, Speer & McMurtrie, and took their receipt therefor. On the 17th, he returned the writs to court.

On April 18, 1883, a rule on the sheriff to pay the money into court was applied for by M. M. McNeil, but was continued on account of the absence of the president judge. On June 26, the rule was granted. On August 13, it issued, and on August 16, was served on D. F. Fortney and accepted by him for the sheriff.

The Court, after argument on March 25, 1884, discharged the rule.

Henderson thereupon took this writ, assigning for error the action of the Court in discharging the rule as above.

*M. M. McNeil* for appellant.

D. F. Fortney was generally known as the sheriff's at-

torney, and his acceptance of service as agent was sufficient to bind his principal. When one appears or once undertakes to be an attorney for another, he shall not be permitted to withdraw himself, and the court looks no further, but proceeds as if the attorney had sufficient authority.

It was the bounden duty of the appellee in this case to pay the money into court: McDonald v. Todd, 1 Grant, 18 ; Williams' Appeal, 9 Barr, 267 ; Irwin v. Workman, 3 Watts, 362.

*D. F. Fortney* for appellee.

In the absence of fraud or collusion, a payment to the attorney of record discharges the defendant, notwithstanding a notice from parties interested in the judgment : Bracken v. Pittsburgh, 27 Pitts. L. J., 202.

The sheriff's duty in distributing the proceeds of an execution against personal estate is not to pay the money into court, but to the party by whom the writ was issued : Marble Co. v. Burke, 5 W. N. C., 125 ; Dunn v. Megarge, 6 W. N. C., 204 ; Weis v. Weis, 3 W. N. C., 76 ; Geisel v. Jones, 7 W. N. C., 82 ; Kirk v. Ruckholdt, *Id.*, 81 ; Baum v. Brown, 11 W. N. C., 202.

If the sheriff, in making the distribution, committed an error, or misapplied or misappropriated any of the funds arising from this sale, the proper remedy was by action on his official bond : *In re* rule upon John S. Bastian, 9 Norris, 472 ; Mather v. McMichael, 1 Harris, 302 ; Norton v. Osler, 91 Pa., 160.

October 6, 1884, the opinion of the Court was filed by GREEN, J.:

We are unable to perceive any sufficient reason for reversing the action of the court below in this case. That action was the discharge of a rule on the sheriff of Centre county to pay into the court of common pleas of Huntingdon county the money realized by the sale of the personal property of Fleck & Miller under certain writs of *test. fi. fa.* issued out of the common pleas of Huntingdon county, and directed to, and executed by, the appellee, who was sheriff of Centre county. The rule to pay the money into court was not granted until June 26, 1883. It was not served upon the appellee until August 16, 1883. But the appellee, in his capacity as sheriff, had paid over to Messrs. Speer & McMurtrie, the attorneys of record for the appellant in the execution upon which the money was made, on April 16, 1883, all the money made upon the writ. The

appellant's judgment was entered on March 23, 1883, in the common pleas of Centre county, the writ of *test. fi. fa.* was issued on it on the 24th of March, and was returnable on the 9th of April. On the 17th of April, the sheriff returned the appellant's writ along with a number of others, and in his return stated that he had applied the whole amount realized by the sale to the various writs in his hands, giving the precise amounts paid to each. The sale of the personal property of the defendants commenced on the 4th of April and continued during three days, and the appellant was present at the sale, and had full knowledge of it. Speer & McMurtrie were the only attorneys appearing of record upon all the writs, and the entire proceeds of sale were paid to them for their respective clients. As this payment was not made until after the return day of the writs, and as no rule to pay the money into court was granted until more than two months after the payment, and this rule was not served upon the appellee until four months had elapsed, his defense against the rule is sufficient unless there are other facts in the case which change his position and deprive him of his right to set up his payment in reply to the rule. It is alleged that there are such facts. On the 10th of April, the day after the return day of the writs, the sheriff was ruled to return his writs. With that rule he fully complied on the 17th. He was not required by that rule to pay any money into court. The record shows that on the 18th of April a rule to pay in the money was applied for but was not disposed of. The president judge being absent, and objection being made, the hearing of the application was continued until June 26, when the rule was granted, but it was not issued until August 13, nor served until the 16th. This latter day is the first upon which the appellee can be distinctly and certainly charged with a knowledge of the rule. It will scarcely be contended that he was bound to keep in his possession the money arising from the sale for that length of time. The sheriff has an undoubted right to pay to the plaintiff in the execution or his attorney of record the money made under it, unless notified not to do so by some one having the right to give such notices or rule to pay it into court. It is manifest that the rule in this case came too late. But it is further alleged that both a verbal and a written notice not to pay the money to Speer & McMurtrie; and also to pay it into court, were served upon the appellee before the money was paid. On this subject the learned court below has found as a fact that the verbal notice is not sufficiently

proved, the evidence in relation to it being contradictory, and the written notice was never served upon the sheriff nor communicated to him in any manner until long after the money was paid over. An examination of the testimony satisfies us that the finding of the court on this subject is correct. As to the verbal notice, the appellant testified to it, but the appellee denies it, and the evidence is therefore contradictory and not satisfactory. As to the written notice, it is not claimed that it was served upon the appellee, or that he did certainly have any direct knowledge of it. But it is said that service of it was accepted by Mr. Fortney as attorney for the sheriff. Mr. Fortney testifies that a paper was handed to him with a request that he would accept service for the sheriff, that he did so without examining it, being very busy at the time, that he never communicated the matter to the sheriff, or told him anything about the notice; that he had no direction or authority to accept service of this notice, and that he had no knowledge of the writs in question or of the sale of the property under them. He also said that when the sheriff desired advice from him, he came to him, and when he was to accept service or notice of any rules, the sheriff always directed him to do so. It is not claimed that Mr. Fortney was the sheriff's deputy, and there is no proof of his authority to act for the sheriff, except that which is contained in his own testimony. As this negatives any authority to bind the sheriff by the acceptance of the notice in question, we do not think it sufficient to charge him with the consequences of a non-observance of its terms. Comment has been made on behalf of the appellant as to the payment to Speer & McMurtrie as attorneys for him on his execution, but we think it without warrant. Those gentlemen performed all the professional service that was rendered in making the money recovered for the appellant. He obtained the confession of judgment in the appellant's favor, entered the judgment of record, issued the writ of execution upon it, and took the same to Centre county, delivered it to the appellee as sheriff of that county to be executed, caused it to be levied upon the goods of the defendants, attended and directed the sale and received the proceeds from the appellee. Immediately after entering the judgment and issuing the execution, they notified the appellant of what they had done in his behalf, and inquired if it was satisfactory. To this notice, which was by letter, the appellant replied, making no objection to their action on his behalf, or to further action by them for him, but on the contrary, re-

[Appeal of John A. Wissel *et al.*, Administrators.]

questing them to send him a statement of the various writs issued, and thanking them for their information. The appellant says in his testimony that he was present with Mr. Speer at the sale, and was directed by him to assist the sheriff all he could at the sale, conversed with him in regard to the crier, knew that Speer & McMurtrie had issued his writ, and did not notify them to retire from his case. It was not until after the sale was completed and money made that he claims to have given any indication that Speer & McMurtrie were not his attorneys in this matter, and then it was not by a notice to them, but to the appellee. That notice came too late to deprive them of their authority or their right to compensation after the continued acquiescence of the appellant in their action on his behalf. The evidence impresses us with the conviction that these gentlemen acted for the appellant in this matter with frankness, promptness, fidelity, and efficiency, and that his attempt to take from them their commissions and deny their authority is ungracious and ill-timed. As they were the only attorneys of record, the payment by the appellee to them of the proceeds of the appellant's writ was an authorized payment, and the learned court below was right in discharging the rule which practically required the appellee to pay the money a second time.

Decree affirmed and appeal dismissed at the cost of the appellant.